T.C. Memo. 2002-50


UNITED STATES TAX COURT


JOSEPH D. AND MI JUNG PARK, ET AL.[1], Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 13778-99, 13784-99,    Filed February 21, 2002.
13789-99.


F. Wallace Pope, Jr., Charles A. Samarkos, and Michael G.
Little, for petitioners.

William R. McCants, for respondent.

---

[1] Cases of the following petitioners are consolidated
herewith:  John N. Park, docket No. 13784-99; and David S. and
Deborah Park, docket No. 13789-99.

MEMORANDUM FINDINGS OF FACT AND OPINION

FOLEY, <u>Judge</u>:  By notices dated June 7 and 8, 1999, respondent determined deficiencies, additions to tax, and penalties relating to petitioners' Federal income tax as follows:

<u>Joseph D. and Mi Jung Park, docket No. 13778-99</u>

|  |  | Additions to Tax | |
| --- | --- | --- | --- |
| Year | Deficiency | Sec. 6651(a)(1)[2] | Sec. 6662(a) |
| 1992 | $105,638 | $26,407 | $21,128 |
| 1993 | 157,576 | 39,394 | 31,515 |

<u>John N. Park, docket No. 13784-99</u>

|  |  | Additions to Tax | |
| --- | --- | --- | --- |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) |
| 1990 | $321,294 | $79,401 | $64,259 |
| 1991 | 128,427 | 31,142 | 25,685 |
| 1992 | 118,697 | 5,920 | 23,739 |
| 1993 | 654,754 | 163,360 | 130,951 |

<u>David S. and Deborah Park, docket No. 13789-99</u>

|  |  | Additions to Tax | |
| --- | --- | --- | --- |
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6662(a) |
| 1992 | $100,630 | $25,097 | $20,126 |
| 1993 | 101,233 | -- | 20,247 |
| 1994 | 237,580 | -- | 47,516 |

The issues for decision are whether petitioners:  (1) Underreported income during the years in issue, and (2) are liable for section 6651 additions to tax and section 6662(a) accuracy-related penalties.

--------

[2]  All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Petitioners resided in Florida at the time they filed their petitions.

The Reverend Yoon Sik Park had three sons, John, Joseph, and David, all of whom were born in Korea. During the years in issue, Joseph and David Park were married to Mi Jung and Deborah Park, respectively. Petitioners immigrated to Maryland and became naturalized U.S. citizens in the 1980s. Petitioners, led by the eldest brother, John, moved to Florida and attempted to establish themselves as businessmen. Using funds given to them by their mother, John bought two strip malls.

At all times relevant, Reverend Park has been the senior pastor of the Pyung Kang Church in Korea, which had 65,000 members. After hearing several of Reverend Park's sermons in 1987, Mr. Kaharudin Latief and Mr. Ferry Tandiono became Christians.

Mr. Latief and Mr. Tandiono were two wealthy Indonesian businessmen. Mr. Latief has extensive business holdings and is heir to an immense family fortune worth hundreds of millions of dollars. From 1967 to 1981, the Latief family owned the exclusive license in Indonesia to operate casinos, the lottery, and greyhound racing. As a young adult, Mr. Latief's lifestyle revolved around exotic sports cars, perpetual partying, and international jet-setting. He would often accompany his father

on trips to Las Vegas, Nevada, where it was not uncommon for them to spend in excess of $6 million in a few days. Mr. Latief's father gave him $50 million when he graduated from college and a hotel in Perth, Australia, upon the birth of Mr. Latief's first son. Despite this extravagant lifestyle, Mr. Latief believed that, prior to his conversion to Christianity, his life was aimless. Similarly, Mr. Tandiono believed that, prior to his conversion to Christianity, his priorities concerning family, work, and religion were misplaced. Because Reverend Park led them to Christianity, Mr. Latief and Mr. Tandiono felt indebted to him. Since their conversion, they have each become elders in Reverend Park's congregation and have donated substantial funds to help establish several other churches.

In 1988, when John told Reverend Park that he was having difficulties establishing a successful business, Reverend Park told him to meet with Mr. Latief. Similarly, in 1991, when David Park wanted to establish his own businesses, Reverend Park told him to contact Mr. Tandiono. Between 1990 and 1994, Mr. Latief and Mr. Tandiono transferred, via traveler's checks and wire transfers, over $9 million to petitioners. Petitioners used these funds to establish at least 13 businesses, all of which failed. During the years in issue, petitioners' family and friends in Korea also gave them smaller amounts for various personal uses (e.g., marriage, childbirth, etc.).

While petitioners felt a moral obligation to repay these funds, neither Mr. Latief nor Mr. Tandiono ever asked for, or expected, repayment or any interest in petitioners' businesses. John Park met with Mr. Latief on numerous occasions during the years in issue. During those meetings, Mr. Latief informed John that he did not expect repayment. Mr. Latief was insulted and angry when John insisted on paying him back with interest, and told John "this was not a business transaction." Similarly, when David Park met with Mr. Tandiono, Mr. Tandiono did not want repayment, because he intended only to help David. In addition, Mr. Tandiono believed it was inappropriate to require repayment from someone experiencing financial difficulties and that God would bless him for helping someone in need.

Respondent was suspicious of the inconsistencies between petitioners' lifestyles and their reported income and believed petitioners were "skimming" money from several of their cash-intensive businesses or from a Presbyterian church they established. Initially, petitioners lied to respondent about the source of their funds, saying they had received the funds from their father. Respondent was not satisfied with this response. Petitioners eventually informed respondent that Mr. Latief and Mr. Tandiono provided them with the funds. Respondent's Criminal Investigation Division found no evidence of "skimming" and could not disprove that Mr. Latief or Mr. Tandiono was the source of

petitioners' funds.  Respondent believed, however, that the funds came from a taxable source.

Respondent reconstructed petitioners' incomes using the cash expenditures method and determined unreported income relating to the years in issue of $7,502,253 for John Park, $830,321 for Joseph and Mi Jung Park, and $1,310,895 for David and Deborah Park.  Respondent also determined that John Park had $10,155 of unreported income from concert promotion activities, and that all petitioners were liable for section 6651(a) additions to tax for failure to timely file and section 6662(a) accuracy-related penalties.

## OPINION

Gross income includes all income from whatever source derived.  Sec. 61.  Respondent's determination is generally presumed correct, and petitioners have the burden of proof.[3] Welch v. Helvering, 290 U.S. 111, 115 (1933).

Petitioners contend that respondent's determinations relating to unreported income are arbitrary and not entitled to a presumption of correctness.  We disagree.  Connecting petitioners to the funds that form the basis of the deficiency is sufficient to give petitioners the burden of proving the determination erroneous.  Schad v. Commissioner, 87 T.C. 609, 620 (1986), affd.

---

[3]  Sec. 7491 is not applicable to this case.

without published opinion 827 F.2d 774 (11th Cir. 1987). Petitioners deposited millions of dollars in their bank accounts while reporting losses from cash-intensive businesses. We conclude that respondent's deficiency determination was not arbitrary. Accordingly, the presumption of correctness applies.

Petitioners, however, have established that the funds attributed to petitioners by respondent's income reconstruction were from nontaxable sources. Petitioners and their witnesses, particularly Mr. Tandiono and Mr. Latief, adequately explained the sources, nature, and amounts of the transfers to petitioners. The funds, transferred from Mr. Tandiono and Mr. Latief to petitioners, were gifts. See Commissioner v. Duberstein, 363 U.S. 278, 285 (1960). Mr. Tandiono's and Mr. Latief's disinterested generosity was inspired by their gratitude towards petitioners' father, Reverend Park, who led Mr. Tandiono and Mr. Latief to Christianity. Family members also sent funds to petitioners as gifts. Respondent failed to present any rebuttal evidence and chose instead to rely solely on the contention that petitioners, their witnesses, and their explanations were not credible. To the contrary, petitioners' testimony, and that of their witnesses, was credible. We conclude that there is no deficiency in income tax, nor section 6662(a) penalty relating to this issue.

Section 6651(a)(1) imposes an addition to tax for failure to file a required return on the date prescribed, unless it is shown that such failure is due to reasonable cause and not willful neglect. Petitioners have not shown that such failure to file by the prescribed date was due to reasonable cause and not willful neglect. Accordingly, petitioners are liable for the section 6651 addition to tax. John Park, however, did not contest respondent's determinations relating to a $10,155 income understatement from a concert promotion business. Thus, the deficiency and section 6662 penalty concerning this issue are sustained. Welch v. Helvering, supra at 115.

To reflect the foregoing,

Decisions will be entered

under Rule 155.